LIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **GENERAL MILLS, INC. and its affiliate GENERAL MILLS OPERATIONS, LLC,**<br><br>Plaintiffs,<br><br>v.<br><br>**BCTGM LOCAL 316G,**<br><br>Defendant. | Case No. 1:13-cv-08020<br><br>Hon. Judge George Marovich |

# BCTGM LOCAL 316G'S

## MEMORANDUM IN SUPPORT OF SUMMARY JUDGEMENT

NOW COMES DEFENDANT, BCTGM Local 316-G ("the Union") by and through its counsel, Laurie M. Burgess, Burgess Law Offices, and submits the following Brief in Support of its Motion for Summary Judgment.

### INTRODUCTION

This matter raises a narrow question of law, namely, whether an Arbitration Award issued by an Arbitrator whom the parties mutually selected to resolve a labor dispute between them pursuant to the "final and binding" terms of their negotiated Collective Bargaining Agreement (CBA) should be sustained by this Court or set aside and decided anew. The Union respectfully submits that this is not a close call: controlling case law mandates that the Award be sustained.

It is well settled law that a party seeking to overturn an arbitrator's award faces a "daunting challenge;" when '[c]ollective bargaining agreements . . . provide grievance procedures to settle disputes between union and employer with respect to the

interpretation and application of the agreement and require binding arbitration for unsettled grievances,' the 'courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract.'" *ANR Advance Transportation Co. v. Int'l Brotherhood Teamsters Local 710,* 153 F.3d 774, 777 (7th Cir. 1998)(quoting *United Paperworkers Int'l v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364 (1987)(emphasis added).

Thus, confronted with the employer's motion for summary judgment seeking to vacate the arbitrator's award entered pursuant to binding arbitration in *ANR,* the district court *sua sponte* granted judgment for the union and upheld the award. Upon review, the Seventh Circuit readily affirmed the district court's decision, reiterating the well-settled law that:

> our role is not to substitute our judgment for the arbitrator or even determine that the arbitration was legally or factually in error; instead, we must limit our inquiry to whether the arbitrator reached his decision through an interpretation of the CBAs. If the arbitrator attempted to give meaning to the terms of the contract, then the award drew its essence from the CBAs and we shall not disturb it. Moreover, '[w]e resolve any reasonable doubt about whether an award draws its essence from the collective bargaining agreement in favor of enforcing the award.

*Id.* (citations omitted)(emphasis added).

The same result is mandated here: because the Arbitrator's award unquestionably "draws its essence" from the parties' Collective Bargaining Agreement, the Award must be affirmed.

## STATEMENT OF FACTS

a. <u>The CBA's Process for Obtaining a "Binding" Arbitration Award</u>

The Company and the Union have had a long collective bargaining relationship in which they have enter into a series of "Master" and "Local" Collective Bargaining

2

Agreements ("CBA"), the most recent of which ran from April 25, 2010 to April 26, 2014. (Rule 56.1 Statement of Facts ("SOF") ¶3, Ex. B, Master CBA). The Master CBA contains the parties' agreement with respect to processing and resolving grievances. Specifically, Article 8 provides a detailed process for advancing any "misunderstanding or grievance" that may arise between the parties through a series of steps designed to informally resolve the matter without the need to resort to arbitration. (SOF ¶4, Ex. B, Master CBA 8.06, 8.07-09). If no settlement is reached after the matter has been processed through the third step of the grievance procedure, the matter is set for "binding arbitration" pursuant to Article 9. *Id.* Article 9 sets forth the conditions that must be met in order to advance the matter to arbitration, as well as the process for mutually selecting an Arbitrator to hear the case. *Id.* Once the dispute is handed off to the Arbitrator for resolution and an award issues, Article 9 stipulates that "his decision shall be final and binding on all parties involved." (SOF ¶4, Ex. B, Master CBA Section 9.03).

b. <u>The Parties Submit the Walsh Grievance to "Binding" Arbitration</u>

With respect to the issue at hand, it is undisputed that all contractual conditions precedent to arbitration were met and that the parties mutually selected Arbitrator Barbara W. Doering to resolve at "binding arbitration" a dispute regarding whether the Company had "just cause" to terminate the employment of bargaining unit member Leysa Walsh. (Arb. Dec. p. 1, SOF ¶ 6). The Arbitrator summarized the parties' respective positions regarding this matter as follows:[1]

---

[1] The Union has only provided the Arbitrator's brief statement of the merits of the underlying case rather than an exhaustive statement of it because the Employer has not challenged the merits of the Arbitrator's award; instead, the Employer is exclusively challenging that portion of Arbitrator Doering's remedy in which she assigns payment to the Union. Hence, the underlying dispute has little relevance in adjudicating the matter before the Court. A detailed account of the case is, however, included in the Arbitrator's careful analysis and Award, which has been

3

"The grievant, Leysa Walsh, was discharged for 3 instances in February 2012 for what the Company concluded to be 'falsification' or her (actual) 'time-in' on the paper form that substitutes for punching-in when an employee does not have his/her FOB. The Company says she [Walsh] did it deliberately in order to avoid possible suspension or termination under the Attendance Policy. The Union urges that the paper FOB form does not specific accuracy *to the minute* – which is literally all that was involved here, just 1 minute in one instance and 2 ½ in the others – and contends that grievant did not knowingly or intentionally do anything wrong." (SOF ¶ 7, Ex. G, Arb. Dec. p. 2,).

c.  The Arbitrator Issues Her Binding Award

Upon hearing the evidence and considering the parties' post-hearing Briefs, the Arbitrator sustained the grievance. In a detailed award, the Arbitrator directed, among other things, that Walsh be "reinstated to her job on 2nd shift or to a comparable job on that shift," that she be given "a sum equal to one week of pay at the rate she was being paid when terminated," and that she be "reinstated with the seniority and pension accumulation she had as of March 6th as though the gap did not exist between March 6, 2012 and her reinstatement…" (SOF ¶ 8, Ex. G, Arb. Dec. p. 27).

The Arbitrator also directed that "as part of the remedy here, the Company shall pay to the Union an amount equal to the amount of hourly pay in the grievant's job at her 2012 rate for 3 weeks less 2 days – which was the amount of time from 2/16/12 to 3/5/12 that the Company took to consider and investigate – for the fact that Mr. Sikich [Walsh's direct supervisor] did not have the grievant sign Attendance Reviews and the fact that the Company did not provide the Union with copies of relevant documents at the suspension meeting." (SOF ¶ 12, Ex. G, Arb. Dec. p. 27).

---

provided to the Court as Ex. G hereto.

Finally, the Arbitrator stated that she would "retain jurisdiction to resolve any issues that may arise with respect to remedy, which, if not invoked by one party or the other within 60 days after receipt of this Award shall then expire." *Id.* The Company did *not* raise any issue with respect to the remedy with the Arbitrator during the 60 day period that she retained jurisdiction over this matter, but instead upon expiration of the Arbitrator's jurisdiction filed the instant Complaint asking the Court to overturn that portion of the Arbitrator's award granting payment to the Union.

## **ARGUMENT**

As noted above, the material issues in this matter are not in dispute; instead, the instant cross-motions for Summary Judgment present purely a legal question, namely, whether that portion of the Arbitrator's Decision awarding "pay" to the Union "draws its essence" from the parties' CBA. If it does, the award must be sustained.

A long and rich line of precedent dating to the 1960 U.S. Supreme Court "Steelworker triology" cases instructs that arbitration awards are to be strictly construed in favor of affirming the award. "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364 (1983). The "mere ambiguity in the opinion accompanying an award which permits the inference that the arbitrator may have exceeded his authority" will *not* suffice to overturn the award. *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 597 (1960).

In keeping with this mandate, the Seventh Circuit has instructed that "[o]ur task is limited to determining whether the arbitrator's award could possibly have been based on

the contract. <u>'[W]e must insist on the enforcement of [the arbitrator's] decision if there is any possible interpretive path from . . . the Agreement to the arbitrator's resolution of this case."</u> *Brotherhood of Locomotive Engineers and Trainmen, General Committee of Adjustment, General Conference v. Union Pacific Railroad Co.*, 719 F.3d 801, 807 (7th Cir. 2013)(citations omitted, emphasis added).

When assessing whether an award "draws its essence" from the parties' CBA, the reviewing Court must refrain from engaging in "beady-eyed scrutiny" of the arbitrator's analysis and decision. *Arch of Illinois, A Division of Apogee Coal Corp. v. Dist. 12, United Mine Workers of America*, 85 F.3d 1289 (7th Cir. 1996). Instead, the Seventh Circuit instructs, "[w]e give great deference to the arbitrator when reviewing interpretations of a CBA and all doubts should be resolved "in favor of enforcing the award." *Clear Channel Outdoor, Inc. v. Int'l Unions of Painters & Allied Trades, Local 770*, 558 F.3d 670, 675 (7th Cir.2009). In fact, "[e]ven if we are convinced that the arbitrator's error in interpreting the parties' agreement was plain, we lack the authority to intervene." Id. at 677.

The deference that is afforded to the merits of an arbitration award is applied with equal, if not greater vigor to the remedy that the Arbitrator selects. "Where it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 41-42 (1983). "Even where there is ambiguity as to whether the remedy is consistent with the contract, "doubts should be resolved in favor of coverage." *United States Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960); *United Steelworkers of Am. v. Wheel &*

6

*Car Corp.,* 363 U.S. 593, 597 (1960)("When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies.")

Thus, the task before this Court, therefore, is to assess whether there is any plausible "interpretive path" from the CBA to the Arbitrator's award granting pay to the Union, which is the sole issue on which the Employer's instant Complaint is based. As is demonstrated in below, there is ample support in the parties' CBA to support the Arbitrator's remedy in this matter. Nor is there anything in the CBA that precludes this award. Hence, under well-settled law, the Arbitrator's remedy must be sustained.

**A.    The Pay Award to the Union Must Be Sustained Because the Award Clearly Draws its Essence from Language Contained in the Parties' CBAs.**

Here, there is a very clear "interpretive path" which demonstrates that the Award "draws its essence" from the parties' Master CBA. Section 9.03 of the Master Agreement expressly vests the Arbitrator with the authority to act with "respect to grievances relating to the interpretation or application of the provisions of this Master Agreement…" (SOF ¶4, Ex. B, Master CBA).

In fashioning the portion of the award ordering pay to the Union, the Arbitrator noted that in processing the Walsh grievance, the Company failed to provide the grievant with signed Attendance Reviews and failed to provide the Union with copies of relevant documents at the suspension meeting. (SOF ¶ 12, Ex. G, Arb. Dec. p. 27). This conduct violates the Master Agreement. As noted earlier, the Master Agreement's grievance procedure includes detailed steps that are to be taken by the parties in order to *avoid* having to take a matter to arbitration: Section 8.06 provides that "an earnest effort shall

7

be made to settle the promptly in the following manner…" Section 8.07 requires a "conference" between the Employee with or without the shop steward, and the immediate Supervisor involved – here, Sikich – whom the Arbitrator refers to in her award. (SOF ¶4, Ex. B, Master CBA). Section 8.08 requires that at the next grievance level there must be a conference involving the Shop Steward in the Employee's Department and the department head, with or without the immediate Supervisor (Sikich). *Id.* Section 8.09 mandates that at the next step in the grievance, the matter is to be addressed at a meeting of the Labor Relations Committee, including the Plant Manager and the HR Manager along with the top local officer or their designee. *Id.*

In this matter, it is undisputed that the Company failed to present relevant evidence to the Union during these grievance steps and instead, presented the materials to the Union *for the first time* during the course of the Arbitration Hearing. (SOF ¶7, Ex. D pp. 55, 323, 327-28). The import of the Employer's failure to provide these pertinent materials to the Union during the grievance procedure provided under Article 8 of the CBA was not lost on the Arbitrator. She expressly states in her Award that her remedy is based in part upon facts including:

> 1) the Company's not having provided copies of the relevant Attendance documents and the 3 FOB forms *at least* at the suspension meeting (if not on 2/16) so hat the Union representatives could have a chance to review them *before* the termination meeting. For that matter, *by* citing the Attendance Policy as one of 3 policies violated, the Company should have produced minutes (probably of the 2/16 meeting, but certainly of the suspension meeting so that the Union could be clear on what was going on prior to the termination meeting. The point of a protocol of suspension prior to termination – *particularly* if the protocol is that the meeting is *not* held until after the Company has reached the decision to terminate – *has to be* that at this meeting the Company carefully explains *why* it believes that it has just cause for terminations and provides copies of all relevant documents. In this case where Mr. Sikich apparently did not have the employee sign the Attendance Review/Reports, at least the recent ones

8

> concerning lates, ERX 7, 8, 9 and the screen shots, ERX 10, 11, 12, should have been provides.

(Ex. G Arb. Dec. p. 21)(emphasis in original).

In addition to properly awarding pay to the Union as a violation of the "grievance" section of the parties' CBA (Article 8), the Arbitrator's decision to award a remedy to the Union for the Company's failure to faithfully follow the steps of the grievance procedure also draws its essence from the opening umbrella of the entire Agreement between the parties which provides that:

> This contract represents the agreement reached between the parties as a result of having collectively bargained in respect to rates of pay, wages, hours of employment, and other conditions of employment, and <u>its purpose is to promote and insure harmonious relations and understanding</u> between the Company and its Employees. To that end <u>the Company pledges itself to give its Employees considerate and courteous treatment</u>, and the Employees, in turn, pledge themselves to render the Company loyal, efficient, and cooperative service.

(Ex. B, Master CBA Preamble, Section 1.02.2)(emphasis added). The Company's failure to provide highly relevant to the Union at any time while processing the Walsh grievance through the steps outlined in Sections 8 and 9 of the CBA hardly constitutes "considerate and courteous treatment" either toward the bargaining unit member at issue (Walsh) or her designated collective bargaining representative, the Union. (Ex. B, Master CBA Art. 2 "Recognition"). Thus, the Arbitrator's decision to award payment to the Union is not contrived or made out of whole cloth; instead, her award clearly "draws its essence" from those sections of the CBA that require the parties to act in good faith while processing a grievance through the various steps of the grievance procedure *before* the matter is processed to arbitration.

The fact that the Arbitrator did not specifically mention Article 1, 8 or 9 in her

9

Award is of no moment; since there is a "possible interpretive path from . . . the Agreement to the arbitrator's resolution of this case," under *Brotherhood of Locomotive Engineers, supra.* 719 F.3d 801, 807 (7th Cir. 2013), the award must be sustained.[2]

**B.  Since No Provision in the CBA Expressly Prohibits the Award of Pay to the Union the Arbitrator's Remedy is Entitled to Full Deference**

As is demonstrated above, since there is a fully plausible "interpretive path" from the CBA to the Arbitrator's award, the portion of the award granting pay to the Union must be sustained. The Union anticipates that the Employer will attempt to argue that the lack of language in the CBA specifically vesting the Arbitrator with the authority to provide such an award precludes the Arbitrator from granting this remedy. But this argument misses the point: so long as nothing in the CBA expressly *precludes* the Arbitrator from ordering this award, the Arbitrator's decision to grant this remedy is deemed to "draw its essence" from the Contract and must be sustained.[3]

A decision can be overturned only where there is *no* contractual basis for the decision. *Enterprise Wheel, supra.*, 363 U.S. at 598 ("mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award."). In order to reverse an arbitrator's award, the moving party "must do more than merely show that its

---

[2] Indeed, even if *arguendo* there were *no* provision in the CBA that provided a basis for this remedy, under Seventh Circuit analysis, the remedy would still necessarily be affirmed: "contracts have implied as well as express terms, and the authority of an arbitrator to interpret a[n] agreement includes the power to discover such terms. Indeed, as long as a plausible solution is available within the general framework of the agreement, the arbitrator has the authority to decide what the parties would have agreed on had they foreseen the particular item in dispute."

[3] Section 9.06 requires that each party "pay its own expenses incurred *in arbitration*" and requires that the other *arbitration* expenses (fees, Arbitrator's expenses) to be "borne equally by the Company and the Union," however nothing in the CBA precludes the Arbitrator from assigning *pre*-arbitration costs to one party, which is what the Arbitrator did here: she assigned pay to the Union for the Company's failure to abide by the contractually mandated *pre*-arbitration procedures spelled out in Sections 8 and 9 of the Master Agreement.

interpretation of the opinion is reasonable; it must demonstrate that the opinion cannot reasonably be interpreted in any other way…" *Arch of Illinois, a Division of Apogee Coal Corp., v. Dist. 12, United Mine Workers of America,* 85 F.3d 1289, 1293 (7th Cir. 1996).

The interpretive approach that lies at the heart of the Employer's anticipated argument here has already been assessed and squarely rejected by our courts. *See, e.g. Dexter Axle Co. v. Int'l Assn. of Machinists and Aerospace Workers, Dist. 90, Lodge 1315*, 418 F.3d 762 (7th Cir. 2005); *Monee Nursery & Landscaping Co. v. Int'l Union of Operating Engineers Local 150, AFL-CIO*, 348 F.3d 671, 678 (7th Cir. 2003). In *Dexter*, as here, the company took no issue with the merits of the decision but instead challenged the remedy. Specifically, it insisted that the arbitrator exceeded his authority by awarding lost wages to the grievants and that the arbitrator's award would effectively require the company to violate express terms of the parties' CBA. *Id.* at 765. In support of this argument, the company pointed out that the parties' CBA omitted the type of remedy that the arbitrator had awarded and that the omission of this type of remedy from the CBA precluded the arbitrator from providing such an award. *Id.* at 766. In other words, the company contended that the arbitrator could only provide remedies that were spelled out in the parties' CBA.

The Court flatly rejected this argument, reasoning that "[i]t is abundantly clear that it is the arbitrator who is behind the driver's wheel of interpretation, not the court… [the] authority to interpret and find a breach of the agreement implies the authority to prescribe a remedy to cure the breach." *Id.* at 768-69. In reaching this conclusion, the Court highlighted the Supreme Court's admonition that:

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in

11

order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsman may never had thought of what specific remedy should be awarded to meet a particular contingency…

*Id.* quoting *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S. Ct. 1358 (1960). Thus, even if there is an error in the analysis, the award must nonetheless be sustained. "If a gaffe authorized a court to set aside the award there would be little difference between arbitration and litigation other than the extra cost and delay of presenting the case to the arbitrator before taking it to the court. That would turn arbitration on its head…" *United Food and Commercial Workers, Local 1546 v. Illinois-American Water Co.*, 569 F.3d 750, 756 (7th Cir. 2009) citing *J.H. Findorff & Son, Inc.* 393 F.3d 742, 745 (7th Cir. 2004). There is no "gaffe" here: as is demonstrated below, there is a *direct* connection between the Arbitrator's award of pay to the Union, and a violation of the parties' Master Agreement. Under well-settled law, this is all that is needed to affirm an Arbitrator's award.

**C.** **The Employer Should Be Ordered to Pay the Union's Costs and Fees in Obtaining Compliance with the Arbitrator's Award.**

Because the Arbitrator's assignment of pay to the Union draws its essence from the CBA, there is no question under controlling law that it must be sustained. Thus, in filing the instant suit, the Employer is tilting at windmills: the law regarding the enforcement of Arbitration is neither new, nor complex: on the contrary, it is firmly settled. For that reason, the Union respectfully requests that this Court grant its pending Motion for Summary Judgment and award the Union the costs in defending the Arbitration Award, and the cost of the instant counter-claim.

Indeed, the Seventh Circuit has made it abundantly clear that this is the fully

appropriate response to a Motion to vacate an arbitration award under facts as those here. "Attempts to obtain judicial review of an arbitrator's decision undermine the integrity of the arbitral process." *Johnson Controls, Inc. v. Edman Controls, Inc.*,712, F.3d 1021 (7th Cir., 2013). For that reason, courts have not hesitated to award sanctions where a party seeks to vacate a proper arbitration award. There exists a "long line of Seventh Circuit cases that have discouraged parties from challenging arbitration awards and have upheld Rule 11 sanctions in cases where the challenge to the award was substantially without merit." *CUNA Mutual Ins. v. Office and Professional Employees,* 443, F.3d 556 (7th Cir. 2006).

In *CUNA*, as here, an employer brought an action seeking to vacate a grievance arbitration award rendered in the union's favor. The trial court granted summary judgment in favor of the union and awarded sanctions under Fed.R.Civ.P. 1. On appeal, the Seventh Circuit affirmed, warning in unusually strong and unequivocal terms:

> Not only do we have to consider the general Rule 11 sanction principles in this case, but we must also consider the long line of Seventh Circuit cases that have discouraged parties from challenging arbitration awards and have upheld Rule 11 sanctions in cases where the challenge to the award was substantially without merit. *See, e.g., Bailey v. Bicknell Minerals, Inc.,*809 F.2d 690, 691 (7th Cir.1987); *Hill v. Norfolk and Western Ry.,* 814, F.2d 1192, (7th Cir.1987); *Machinists & Aerospace Workers v. Clearing*, 807 F.2d 618 (7th Cir.1986); *Dreis & Krump Mfg. Co. v. Int'l Assoc. Machinists District 8*, 802 F.2d 247, 255-56 (7th Cir.1986). In *Dreis & Krump Manufacturing Co.,* 802 F.2d at 255-56 this Court said:
>
> A company dissatisfied with the decisions of labor arbitrators need not include an arbitration clause in its collective bargaining contracts, but having agreed to include such a clause it will not be permitted to nullify the advantages to the union by spinning out the arbitral process unconscionably through the filing of meritless suits and appeals. For such conduct the law authorizes sanctions that this court will not hesitate to impose. Mounting federal caseloads and growing public dissatisfaction with the costs and delays of litigation have made it imperative that the federal courts impose sanctions on persons and firms that abuse their right

of access to these courts.... **Lawyers practicing in the Seventh Circuit, take heed!**

The precedent is clear and emphatic and directs us to uphold sanctions in a broad spectrum of arbitration cases. The "filing of meritless suits and appeals" in arbitration cases warrants Rule 11 sanctions. We are thus compelled to uphold the lower court's award of sanctions against CUNA. We find that CUNA's claims were meritless and were very unlikely to succeed in the lower court based on the straight-forward case law relevant to these claims.

*Dreis*, the case in which the Seventh Circuit cautioned lawyers that seek to vacate litigators to "take heed," was decided in *1986*. Thus, the Employer in this matter, who is represented by able counsel, has had nearly *three decades* to be "take heed" of the rule of law in this Circuit regarding the standard of deference afforded arbitration awards, yet it has failed and refused to do so.

Because the case law on this matter is well settled[4] the Employer has no excuse for filing the instant Complaint, which has no basis in the law. For that reason, the Union respectfully submits that its request for Summary Judgment in its favor, as well as its request for assignment of costs and fees in this matter, should be GRANTED.

                              Respectfully submitted,

                              BCTGM Local 316-G

                By:    <u>s/s Laurie M. Burgess</u>

Laurie M. Burgess
Burgess Law Offices
200 W. Madison #2670
Chicago, IL 60606
312/456-0500

---

[4] Indeed, we call to the Court's attention the fact that the arguments presented to this Court, as well as the majority of the cases cited in the instant Brief, were presented virtually verbatim in *CUNA*. *CUNA*, 443, F.3d 556. It was incumbent upon the Employer and its counsel to familiarize itself with these principles or law and the Seventh Circuit's "heed" before filing the instant Complaint. Its failure to do so subjects it to payment of the Union's costs and fees in this matter.

14

**CERTIFICATE OF SERVICE**

Laurie M. Burgess, an attorney, hereby certifies that she caused a copy of the foregoing Rule 56.1 Statement of Facts and accompanying materials in support of its Rule 56.1 Statement, and Memorandum of Law in Support of Summary Judgment, to be filed and served electronically on all parties of record, this 2nd day of May, 2014.

                                                        Respectfully submitted,

                                                        s/s Laurie M. Burgess

Laurie M. Burgess
Burgess Law Offices
200 W. Madison
Suite 2670
Chicago, IL 60606
312/456-0500