**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| **GENERAL MILLS, INC. and its affiliate GENERAL MILLS OPERATIONS, LLC,**<br><br>Plaintiffs,<br><br>v.<br><br>**BCTGM LOCAL 316G,**<br><br>Defendant. | Case No. 1:13-cv-08020 |

## DEFENDANT COUNTER-PLAINTIFF BCTGM LOCAL 316G'S

## RULE 56.1 STATEMENT OF UNDISPUTED FACTS

NOW COMES DEFENDANT, BCTGM Local 316-G, by and through its counsel, Laurie M. Burgess, Burgess Law Offices, and submits the following statement of undisputed facts:

1.      This Court has jurisdiction over this matter pursuant to the Federal Arbitration Act, 9 U.S.C. § 10, *et. seq.*, and Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, and venue is proper in the Northern District of Illinois. (Ex. F, Answer to Counterclaim ¶1)[1].

2.      BCTGM Local 316G ("the Union"), is now, and at all times material herein was, a labor organization within the meaning of Section 2(5) of the National Labor Relations Act, 29

---

[1] The parties agree to the facts of the case, and to the authenticity of the documents at issue via their Answer to the Complaint (Ex. E hereto) and to the Counterclaim (Ex. F hereto). Therefore, Exs. E and F are repeatedly used throughout the instant Statement of Facts ("SOF") for purposes of laying a foundation for the other documents (such as the parties' CBA and the Arbitration Award) which were filed with the Complaint and Counterclaim.

U.S.C. § 152(5), and Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. (Ex. 1, Answer to Counterclaim ¶2).

3.      General Mills and the Union are parties to a Collective Bargaining Agreement called the "Supplemental Agreement" (the "Supplemental CBA"), (Ex. A hereto), and are also parties to a Master Agreement (the "Master CBA") with the Union's affiliated International, Bakery Confectionery Tobacco Workers & Grain Millers International Union ("International Union"), and each of its Local Unions, including Local 316G in West Chicago, Illinois. (Ex. B hereto).  (Answer to Counterclaim ¶4, 5).

4.      The Master Agreement includes the following provisions:

<u>ARTICLE I PREAMBLE</u>:

<u>Section 1.02 NATURE OF AGREEMENT</u>

1.02.2 – This contract represents the agreement reached between the parties as a result of having collectively bargained in respect to rates of pay, wages, hours of employment, and other conditions of employment, and its purpose is to promote and insure harmonious relations and understanding between the Company and its Employees.  To that end the Company pledges itself to give its Employees considerate and courteous treatment, and the Employees, in turn, pledge themselves to render the Company loyal, efficient, and cooperative service.

1.02-3 – In consideration of these promises and the mutual promises of the respective parties herein contained, the parties hereto mutually covenant and agree to and with each other as follows:

<u>ARTICLE 2. RECOGNITION</u>

<u>Section 2.01</u> – The Company recognizes the Union as the sole collective bargaining agent for its Employees in those of the Company's plant(s) or other appropriate collective bargaining units

wherein a majority of its Employees have designated the Union as their collective bargaining representative for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment or other conditions of employment . . .

*      *      *      *      *      *      *

## ARTICLE 8. GRIEVANCE PROCEDURE

<u>Section 8.06</u> – Should any misunderstanding or grievance arise, an earnest effort shall be made to settle the matter promptly in the following manner:

<u>Section 8.07 First Step</u> – By conference between the Employee(s) with or without Shop Steward, and the immediate Supervisor.  If no settlement is reached within three (3) working days after the grievance has been thus submitted, then the matter shall be referred to,

<u>Section 8.08 Second Step</u> – Conference between the Shop Steward in the Employee's respective department and the department head, with or without the Employee's immediate supervisor.  (No grievance will be adjusted beyond the first step outlined above unless the Union has first been notified of such grievance and has been given the opportunity to be present at the adjustment).  If no settlement is reached within five (5) working days after such reference, then,

<u>Section 8.09 Third Step</u> – The matter shall be referred to the next monthly meeting of the Labor Relations Committee, including the Plant Manager and the HR Manager along with the top local officer or their designee.  If no settlement is reached upon conclusion of the following labor relations meeting, it shall, at the request of either party, be referred to arbitration in accordance with the provisions of Article 9.

## ARTICLE 9. ARBITRATION

<u>Section 9.01</u> – If a grievance is to be referred to arbitration, notification of such intent shall be given by Local Union by Certified Mail to the Plant Manager or Plant Human Resources

Manager within sixty (60) calendar days of the third-step meeting at which the grievance was considered.

Section 9.02 – If the Company and the Union are unable promptly to agree upon an impartial arbitrator the parties will request a list of arbitrators from the Federal Mediation and Conciliation Service. The impartial arbitrator shall be designated in accordance with the rules and procedures of the Federal Mediation and Conciliation Service.

Section 9.03 – The Arbitrator shall have authority to act only with respect to grievances relating to the interpretation or application of the provisions of this Master Agreement and any Supplemental Agreement, and his decision shall be final and binding on all parties involved.

9.

Section 9.04 – It is agreed that no grievance shall be subject to arbitration unless it has been processed through al the steps of the grievance procedure as outlined in ARTICLE 8.

Section 9.05 – Arbitration may not be resorted to as a substitute for negotiations provided for in this Agreement.

Section 9.06 – Each party shall pays its own expenses incurred in arbitration. All other expenses of arbitration, including the fees and expenses of the Arbitrator, shall be borne equally by the Company and the Union.

Section 9.07 – During any dispute, complaint, or grievance, the Employee(s) concerned shall continue to work under the conditions existing prior to the time the dispute, complaint, or grievance arose, unless discharged by the Company.

Section 9.08 – If the Arbitrator shall find that an Employee has been unjustly discharged, he shall be given an opportunity to return to work. If he also finds that he should be paid for any time lost, such time shall be determined by the Arbitrator.

Section 9.09 – Prior to arbitrating a grievance covered by this Master Agreement, a Minneapolis Labor Relations Department member and a duly authorized office of the International Union will review the grievance.  If resolution is not reached, the arbitration will proceed.  (Ex. 3); (Answer to Counterclaim ¶¶4, 5).

5.      On or about March 21, 2012, the Union appealed a grievance concerning the termination of General Mills Employee and Union member Leysa Walsh from employment (hereinafter "the grievance) to arbitration.  (Answer to Counterclaim ¶ 7, Grievance, Ex. C).

6.      On or about January 31, 2013 an arbitration pertaining to the grievance was held before Arbitrator Barbara W. Doering pursuant to the terms of the Parties' Master Agreement.  (Counterclaim Answer ¶8, Master Agreement, Ex. B hereto, Arbitration Transcript Ex. D hereto).

7.      On August 10, 2013, Arbitrator Doering issued her Decision regarding the grievance.  (Counterclaim Answer ¶10, Arbitrator's Decision and Award, Ex. G).

8.      In her Decision, Arbitrator Doering ordered that the grievant (Walsh) be reinstated to her job on 2nd shift and provided for restoration of other benefits to Walsh, which are described in the Arbitrator's Decision and Award.  (Counterclaim Answer ¶11, Ex. G).

9.      In her Decision, Arbitrator Doering found that the Company through its agent, Ms. Oberg, "*did not* provide copies of UX (Union Exhibit) 2 or any other documents to the grievant and the Union either at the suspension meeting the day before, or at the termination meeting."  (Ex. G p. 14)(Emphasis in original)

10.     In her Decision, Abitrator Doering noted that at Hearing, "the Union made 4 or 5 contentions in its opening statement(s) and an additional argument developed during the hearing in connection with Company exhibits, records, and contentions that the Union felt had been

unreasonably withheld to the extent of compromising due process with respect to the grievant's defense and its ability to assess and argue its case." (Ex. G p. 15).

11.    In her Decision, Arbitrator Doering stated that some of the "considerations" that "weighed" in on her Award included:

"1) the Company's not having provided copies of the relevant Attendance documents and the 3 FOB forms *at least* at the suspension meeting (if not on 2/16) so hat the Union representatives could have a chance to review them *before* the termination meeting. For that matter, *by* citing the Attendance Policy as one of 3 policies violated, the Company should have produced minutes (probably of the 2/16 meeting, but certainly of the suspension meeting so that the Union could be clear on what was going on prior to the termination meeting. The point of a protocol of suspension prior to termination – *particularly* if the protocol is that the meeting is *not* held until after the Company has reached the decision to terminate – *has to be* that at this meeting the Company carefully explains *why* it believes that it has just cause for terminations and provides copies of all relevant documents. In this case where Mr. Sikich apparently did not have the employee sign the Attendance Review/Reports, at least the recent ones concerning lates, ERX 7, 8, 9 and the screen shots, ERX 10, 11, 12, should have been provides." (Ex. G p. 21)(emphasis in original).

12.    In her Decision, Arbitrator Doering ordered in part that "the Company shall pay to the Union an amount equal to the amount of hourly pay in the grievant's job at her 2012 rate for 3 weeks less 2 days – which was the amount of time from 2/16/12 to 3/5/12 that the Company took to consider and investigate – for the fact that Mr. Sikich did not have the grievant sign Attendance Reviews and the fact that the Company did not provide the Union with copies of

relevant documents at the suspension hearing." (Counterclaim Answer ¶12, Arbitrator's Decision and Award, Ex. at p. 27).

13.     The Parties' Master Agreement provides in pertinent part that the Arbitrator's decision "shall be final and binding on all parties involved." (Counterclaim Answer ¶13, Ex. B, Master Agreement page 16, Section 9.03).

14.     General Mills has not complied with the portion of the Arbitrator's Decision awarding money to the Union as described in paragraph 12 above. (Counterclaim Answer ¶14).

Respectfully submitted,

Defendant BCTGM Local 316-G

By:     s/s Laurie M. Burgess

Laurie M. Burgess
Burgess Law Offices
200 W. Madison Suite 2670
Chicago, IL 60602
312/456-0500