IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GENERAL MILLS INC. and its affiliate GENERAL MILLS OPERATIONS, LLC,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>BCTGM LOCAL 316G,<br><br>　　　　　Defendants. | Case No. 1:13-cv-08020<br><br>Honorable George M. Marovich |

**PLAINTIFFS' RESPONSE TO DEFENDANT BCTGM LOCAL 316G'S RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

General Mills, Inc. and its affiliate General Mills Operations, LLC, ("General Mills" or "Plaintiff"), by and through their attorneys, submit this response to Defendant's Statement of Undisputed Facts as follows.

1. This Court has jurisdiction over this matter pursuant to the Federal Arbitration Act, 9 U.S.C. § 10, et. seq., and Section 301 of the Labor-Management Relations Act, 29 U.S.C.§ 185, and venue is proper in the Northern District of Illinois. (Ex. F, Answer to Counterclaim 1).

    **ANSWER:** Plaintiffs admit the assertions in Paragraph 1.

2. BCTGM Local 316G ("the Union"), is now, and at all times material herein was, a labor organization within the meaning of Section 2(5) of the National Labor Relations Act, 29 U.S.C. § 152(5), and Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. (Ex. 1, Answer to Counterclaim ¶2).

    **ANSWER:** Plaintiffs admit the assertions in Paragraph 2.

3. General Mills and the Union are parties to a Collective Bargaining Agreement called the "Supplemental Agreement" (the "Supplemental CBA"), (Ex. A hereto), and are also parties to a Master Agreement (the "Master CBA") with the Union's affiliated International, Bakery Confectionery Tobacco Workers & Grain Millers International Union ("International Union"), and each of its Local Unions, including Local 316G in West Chicago, Illinois. (Ex. B hereto). (Answer to Counterclaim 4, 5).

**ANSWER:** Plaintiffs admit the assertions in Paragraph 3.

4. The Master Agreement includes the following provisions:

## ARTICLE I PREAMBLE:

Section 1.02 NATURE OF AGREEMENT

1.02.2 This contract represents the agreement reached between the parties as a result of having collectively bargained in respect to rates of pay, wages, hours of employment, and other conditions of employment, and its purpose is to promote and insure harmonious relations and understanding between the Company and its Employees. To that end the Company pledges itself to give its Employees considerate and courteous treatment, and the Employees, in turn, pledge themselves to render the Company loyal, efficient, and cooperative service.

1.02.3 In consideration of these promises and the mutual promises of the respective parties herein contained, the parties hereto mutually covenant and agree to and with each other as follows:

## ARTICLE 2. RECOGNITION

Section 2.01 The Company recognizes the Union as the sole collective bargaining agent for its, Employees in those of the Company's plant(s) or other appropriate collective bargaining units wherein a majority of its Employees have designated the Union as their collective bargaining representative for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment or other conditions of employment . . .

\* \* \* \* \* \*

## ARTICLE 8. GRIEVANCE PROCEDURE

Section 8.06 Should any misunderstanding or grievance arise, an earnest effort shall be made to settle the matter promptly in the following manner:

Section 8.07 First Step  By conference between the Employee(s) with or without Shop Steward, and the immediate Supervisor.  If no settlement is reached within three (3) working days after the grievance has been thus submitted, then the matter shall be referred to,

Section 8.08 Second Step  Conference between the Shop Steward in the Employee's respective department and the department head, with or without the Employee's immediate supervisor.  (No grievance will be adjusted beyond the first step outlined above unless the Union has first been notified of such grievance and has been given the opportunity to be present at the adjustment).  If no settlement is reached within five (5) working days after such reference, then,

Section 8.09 Third Step  The matter shall be referred to the next monthly meeting of the Labor Relations Committee, including the Plant Manager and the HR Manager along with the top local officer or their designee.  If no settlement is reached upon conclusion of the following labor relations meeting, it shall, at the request of either party, be referred to arbitration in accordance with the provisions of Article 9.

## ARTICLE 9. ARBITRATION

Section 9.01  If a grievance is to be referred to arbitration, notification of such intent shall be given by Local Union by Certified Mail to the Plant Manager or Plant Human Resources Manager within sixty (60) calendar days of the third-step meeting at which the grievance was considered.

Section 9.02   If the company and the Union are unable promptly to agree upon an impartial arbitrator the parties will request a list of arbitrators from the Federal Mediation and Conciliation Service.  The impartial arbitrator shall be designated in accordance with the rules and procedures of the Federal Mediation and Conciliation Service.

Section 9.03   The Arbitrator shall have authority to act only with respect to grievances relating

to the interpretation or application of the provisions of this Master Agreement and any Supplemental Agreement, and his decision shall be final and binding on all parties involved.

Section 9.04   It is agreed that no grievance shall be subject to arbitration unless it has been processed through all the steps of the grievance procedure as outlined in ARTICLE 8.

Section 9.05   Arbitration may not be resorted to as a substitute for negotiations provided for in this Agreement.

Section 9.06   Each party shall pay its own expenses incurred in arbitration. All other expenses of arbitration, including the fees and expenses of the Arbitrator, shall be borne equally by the Company and the Union.

Section 9.07   During any dispute, complaint, or grievance, the Employee(s) concerned shall continue to work under the conditions existing prior to the time the dispute, complaint, or grievance arose, unless discharged by the Company.

Section 9.08   If the Arbitrator shall find that an Employee has been unjustly discharged, he shall be given an opportunity to return to work. If he also finds that he should be paid for any time lost, such time shall be determined by the Arbitrator.

Section 9.09   Prior to arbitrating a grievance covered by this Master Agreement, a Minneapolis Labor Relations Department member and a duly authorized office of the International Union will review the grievance. If resolution is not reached, the arbitration will proceed. (Ex. 3); (Answer to Counterclaim 4, 5).

**ANSWER:**   Plaintiffs admit that the cited provisions appear in the Master Agreement, but deny any implication that all of the cited provisions are relevant to this dispute or were relied upon by the parties or arbitrator.

5. On or about March 21, 2012, the Union appealed a grievance concerning the termination of General Mills Employee and Union member Leysa Walsh from employment (hereinafter "the grievance) to arbitration. (Answer to Counterclaim 7, Grievance, Ex. C).

ANSWER: Plaintiffs admit the assertions in Paragraph 5.

6. On or about January 31, 2013 an arbitration pertaining to the grievance was held before Arbitrator Barbara W. Doering pursuant to the terms of the Parties' Master Agreement. (Counterclaim Answer 8, Master Agreement, Ex. B hereto, Arbitration Transcript Ex. D hereto).

ANSWER: Plaintiffs admit the assertions in Paragraph 6.

7. On August 10, 2013, Arbitrator Doering issued her Decision regarding the grievance. (Counterclaim Answer 10, Arbitrator's Decision and Award, Ex. G).

ANSWER: Plaintiffs admit the assertions in Paragraph 7.

8. In her Decision, Arbitrator Doering ordered that the grievant (Walsh) be reinstated to her job on 2nd shift and provided for restoration of other benefits to Walsh, which are described in the Arbitrator's Decision and Award. (Counterclaim Answer 11, Ex. G).

ANSWER: Plaintiffs admit the assertions in Paragraph 8, except to the extent it implies that all benefits were restored to Grievant Walsh. Plaintiffs admit that the benefits restored to the Grievant are described in the Arbitrator's Decision.

9. In her Decision, Arbitrator Doering found that the Company through its agent, Ms. Oberg, "did not provide copies of UX (Union Exhibit) 2 or any other documents to the grievant and the Union either at the suspension meeting the day before, or at the termination meeting." (Ex. G p. 14).

ANSWER: Plaintiffs admit that the quoted language appears in Arbitrator Doering's Decision. Plaintiffs admit that Arbitrator Doering concluded that Ms. Oberg specifically had not provided those copies, but deny the implication that Arbitrator Doering made any conclusion about the "Company."

10. In her Decision, Arbitrator Doering noted that at Hearing, "the Union made 4 or 5 contentions in its opening statement(s) and an additional argument developed during the hearing in connection with Company exhibits, records, and contentions that the Union felt had been unreasonably withheld to the extent of compromising due process with respect to the grievant's defense and its ability to assess and argue its case." (Ex. G p. 15).

**ANSWER:** Plaintiffs admit that the cited language appears in Arbitrator Doering's Decision.

11. In her decision, Arbitrator Doering stated that some of the "consideration" that "weighed" in on her award included:

"1) the Company's not having provided copies of the relevant Attendance documents and the 3 FOB forms at least at the suspension meeting (if not on 2/16) so that the Union representatives could have a chance to review them before the termination meeting. For that matter, by citing the Attendance Policy as one of 3 policies violated, the Company should have produced minutes (probably of the 2116 meeting, but certainly of the suspension meeting so that the Union could be clear on what was going on prior to the termination meeting. The point of a protocol of suspension prior to termination- particularly if the protocol is that the meeting is not held until after the Company has reached the decision to terminate has to be that at this meeting the Company carefully explains why it believes that it has just cause for terminations and provides copies of all relevant documents. In this case where Mr. Sikich apparently did not have the employee sign the Attendance Review/Reports, at least the recent ones concerning lates, ERX 7, 8, 9 and the screen shots, ERX 10, 11, 12, should have been provides." (Ex. G p. 21).

**ANSWER:** Plaintiffs admit that the quoted language appears at page 21 of the Decision, but denies that Arbitrator Doering stated that it was some of the "consideration that weighed in on her award." Instead, Arbitrator Doering stated, "The 2 paragraphs above are the Arbitrator's initial conclusion that it was done knowingly with intent to deceive, but without yet having weighed other considerations relevant to the penalty of summary discharge, such as:. . ."

12. In her Decision, Arbitrator Doering ordered in part that "the Company shall pay to the Union an amount equal to the amount of hourly pay in the grievant's job at her 2012 rate for 3 weeks less 2 days which was the amount of time from 2/16/12 to 3/5/12 that the Company took to consider and investigate for the fact that Mr. Sikich did not have the grievant sign Attendance

Reviews and the fact that the Company did not provide the Union with copies of relevant documents at the suspension hearing." (Counterclaim Answer ¶12, Arbitrator's Decision and Award, Ex. at p. 27).

**ANSWER:** Plaintiffs admit that the cited language appears in Arbitrator Doering Decision.

13. The Parties' Master Agreement provides in pertinent part that the Arbitrator's decision "shall be final and binding on all parties involved." (Counterclaim Answer 13, Ex. B, Master Agreement page 16, Section 9.03).

**ANSWER:** Plaintiffs admit that the cited language appears in the Parties' Master Agreement, but state that the entirety of Section 9.03 provides further context and reads as follows (as cited in Paragraph 3 by Defendant): "The Arbitrator shall have authority to act only with respect to grievances relating to the interpretation or application of the provisions of this Master Agreement and any Supplemental Agreement, and his decision shall be final and binding on all parties involved."

14. General Mills has not complied with the portion of the Arbitrator's Decision awarding money to the Union as described in paragraph 12 above. (Counterclaim Answer 14).

**ANSWER:** Plaintiffs admit that they have not paid money to the Union as awarded by the Arbitrator due to pendency of this case but, per the Company's Motion for Summary Judgment and supporting papers, deny that the Arbitrator had the authority to order that this penalty be paid.

Respectfully submitted,

By: /s/Kathryn E. Siegel
One of the Attorneys for Plaintiffs

Adam C. Wit
Kathryn E. Siegel
LITTLER MENDELSON, P.C.
321 North Clark Street, Suite 1000
Chicago, IL 60654
312.372.5520

Dated: May 30, 2014

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing ***Plaintiffs' Response to Defendant BCTGM LOCAL 316G'S Rule 56.1 Statement of Undisputed Facts*** was electronically filed with the CM/ECF filing system on May 30, 2014, with will send such notification to the following:

Laurie M. Burgess
Burgess Law Offices
200 W. Madison Street, Suite 2670
Chicago, IL 60602
312-456-0500

                                        */s/ Kathryn E. Siegel*
                                        Kathryn E. Siegel

Firmwide:127040547.1 040218.2199