IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **GENERAL MILLS, INC. and its affiliate GENERAL MILLS OPERATIONS, LLC,**<br><br>Plaintiffs,<br><br>v.<br><br>**BCTGM LOCAL 316G,**<br><br>Defendant. | Case No. 1:13-cv-08020<br><br>Judge George M. Marovich<br>Magistrate Arlander Keys |

**DEFENDANT/COUNTER-PLAINTIFF'S RESPONSE TO
PLAINTIFFS/COUNTER-DEFENDANTS RULE 56.1
STATEMENT OF UNCONTESTED FACTS**

Defendant/Counter-Plaintiff BCTGM Local 316-G, by and through its counsel, Laurie M Burgess, Burgess Law Offices, hereby submit their Response to Plaintiff/Counter-Defendant's Local Rule 56.1(a)(3) Statement of Uncontested Material Facts, as follows:

1. Plaintiffs' Complaint alleges claims under the Federal Arbitration Act, 9 U.S.C. § 10, et. seq., and Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. (Def's Answer to Plfs' Compl. ¶ 1, Attached as Exhibit 1).

**RESPONSE**: Admit

2. The parties do not dispute that venue is proper under 28 U.S.C. § 1391(b). (*Id.* at ¶ 2).

**RESPONSE**: Admit

3. Plaintiffs are engaged in business within the state of Illinois. (*Id.* at ¶ 3).

**RESPONSE**: Admit

4. Defendant, BCTGM Local 316G ("Union") is a labor organization within the

meaning of Section 2(5) of the National Labor Relations Act, 29 U.S.C. ¶ 152(5), and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, which represents employees engaged in an industry affecting commerce, and maintains a place of business and transacts business within Illinois and the geographic area comprising the Northern District of Illinois. Respondent's offices are in West Chicago, Illinois. (*Id.* at ¶ 4).

**RESPONSE**: Admit

5. General Mills operates a food manufacturing plant in West Chicago, Illinois (the "West Chicago Plant"). (Ex. 1, ¶ 5).

**RESPONSE**: Admit

6. The plant spans about 40 acres and manufactures popular breakfast cereals including Cinnamon Toast Crunch and Chex, meal helpers such as Hamburger Helper and Chili Mack, and snacks such as Bugles. (Ex. 1, ¶ 5).

**RESPONSE**: Admit

7. Hourly production and warehouse employees are represented by BCTGM Local 316G ("Local 316G" or the "Union"). (Ex. 1, ¶ 5).

**RESPONSE**: Admit

8. General Mills and Local 316G are parties to a Collective Bargaining Agreement called the Supplemental Agreement (the "Supplemental CBA"), the effective dates of which are September 19, 2010 to September 20, 2014. (Ex. 1 ¶ 6; Dkt. 1, Ex. A).

**RESPONSE**: Admit

9. General Mills is also party to a Master Agreement (the "Master CBA") with the Union's affiliated International, Bakery Confectionery Tobacco Workers & Grain Millers International Union ("International Union"), and each of its Local Unions, including Local 316G in West Chicago, Illinois, the effective dates of which are April 25, 2010 to Saturday April 26,

2014. (Ex. 1 ¶ 7; Dkt. 1, Ex. B)

>    **RESPONSE**: Admit

10. The Master CBA contains a grievance procedure for the resolution of disputes between General Mills and the Union, as well as provisions for arbitration of grievances. (Ex. 1 ¶ 7; Dkt. 1, Ex. B, at pp. 15-17, Article 8. Grievance Procedure; Article 9. Arbitration).

>    **RESPONSE**: Admit.

11. Article 9 of the Master CBA provides that "an Arbitrator shall have the authority to act only with respect to grievances relating to the interpretation or application of the provisions of this Master Agreement and any Supplemental Agreement. . ." (Dkt. 1, Ex. B. p. 16, Section 9.03.).

>    **RESPONSE**: Admit that the quoted section is included as part of the provision in Article 9; object to the incompleteness of the statement provided as mischaracterizing the meaning of the complete Article.

12. The Master CBA further provides that "no grievance shall be subject to arbitration unless it has been processed through all the steps of the grievance procedure outlined in Article 8." (Ex. 1 ¶ 10; Dkt. 1, Ex. B. p. 16, Section 9.04).

>    **RESPONSE**: Admit that the cited language appears in the CBA, but avers that the statement is incomplete.

13. The Master CBA limits the potential remedies when the Arbitrator finds that a grievant has been unjustly discharged. Section 9.08 of the Master CBA states that, in such instances, the Grievant: "shall be given an opportunity to return to work. If he [the Arbitrator] finds that he [Grievant] should be paid for any time lost, such time shall be determined by the Arbitrator." (Dkt. 1, Ex. B. p. 17, Section 9.08).

>    **RESPONSE**: Deny first sentence. This is a characterization of the CBA and hence is argument, not a factual statement. The CBA language speaks for itself. Admit that the quoted portion is included in Section 9.08 of the CBA.

3

14. Leysa Walsh (the "Grievant"), is a member of the Union and is employed by General Mills at its West Chicago Plant. (Ex. 1 ¶ 13).

**RESPONSE:** Admit.

15. The Grievant was discharged, effective March 6, 2012, after the Company found that she had falsified several "Missed Punch or Time Correction Forms" in February 2012. (Ex. 1 ¶ 15; Dkt. 1, Ex. G, p. 3).

> **RESPONSE**: Admit that Grievant was discharged effective March 6, 2012, admit that the Company claimed she had falsified several "Missed Punch or Time Correction Forms" but deny the conclusion/characterization that she did falsify the forms.

16. The Union filed a grievance regarding Grievant's discharge. (Ex. 1 ¶ 16; Dkt. 1, Ex. C). Under "statement of grievance" the grievance reads "unjustly terminated asking to be reinstated and to be made whole for all monies lost." (Dkt. 1, Ex. C).

**RESPONSE**: Admit

17. The grievance involving the Grievant's discharge was appealed to arbitration on March 21, 2012. (Ex. 1 ¶ 17; Dkt. 1, Ex. C).

**RESPONSE**: Admit.

18. An arbitration hearing was held on January 31, 2013 before Arbitrator Barbara W. Doering concerning the termination of Grievant's employment. (Ex. 1 ¶ 18; Dkt. 1, Arbitration Transcript, "Exhibit D").

> **RESPONSE**: Admit that a hearing was held on that date before Arbitrator Doering, deny any characterization regarding any limitation on the issues before the arbitrator or what the arbitration "concerned," but admit that the arbitration concerned facts surrounding the termination of Walsh's employment including the Employer's failure to fully or fairly investigate the basis for the termination and the failure to provide documents that it considered to be relevant to the termination decision to the Union during the pendency of the grievance procedure, or at any other time through and including to the date of the Arbitration hearing. *See* Dkt. 1 Ex. F Union Brief pp. 17-21, 22-26 and record citations contained therein).

19. The parties stipulated to the following issue for Arbitrator Doering to decide:

4

"Did the Company have just cause for the discharge of the Grievant, Leysa Walsh, and if not, what shall be the remedy?" (Ex. 1 ¶ 19; Dkt. 1, Ex. D, p. 6).

> **RESPONSE**: Admit, however, further answering, Defendant avers that throughout the course of the arbitration hearing additional matters pertaining to the grievance and grievance procedure were raised which the Union did not know about prior to the hearing. These matters included the Employer's failure to produce documentation that it deemed to be relevant to its termination decision to the Union either during the processing of the grievance, or at any time up to the date of the Arbitration Hearing. Dkt. 1 Ex. D (Arb Record) at pp. 202-04, 280-81, 335-36, Dkt 1 Ex. F (Union Brief) at 14, 17-20, 22, 26-27.

20. During the arbitration, the testimony focused on Grievant's alleged tardy arrivals to work, Grievant's completion of the Missed Punch or Time Correction Forms recording her time at work, her suspension from employment, and her ultimate termination. (*See generally* Dkt. 1, Ex. D).

> **RESPONSE**: Admit that these issues were presented during the arbitration hearing; deny any characterization regarding the limitation of issues raised at the hearing. Further answering Defendant avers that the Arbtrator expressly held that additional significant matters arose during the course of the hearing pertaining to the Employer's failure to provide documentation to the Union regarding the Walsh grievance during the pendency of the grievance procedure. *See* Dkt. 1 Ex. D (Arb Record) at pp. 202-04, 280-81, 335-36, Dkt 1 Ex. F (Union Brief) at 14, 17-20, 22, 26-27.

21. In a few instances, the Union objected to the entry of certain exhibits offered by the Company. (*See* Dkt. 1, Ex. D, p. 53-55, 202-205, 321-322).

> **RESPONSE**: Admit that the Union objected to introduction of certain exhibits into evidence; deny characterization of "a few instances;" Defendant avers that the Company's failure to timely produce documents to the Union during the course of the processing of the Walsh grievance was a significant one that was raised throughout the proceedings, as the Arbitrator so found. *See* in addition to the sites listed by Plaintiff Dkt. 1 Ex. D pp 280-81, 335-36.

22. The Union claimed that it had requested a copy of all documents that were going to be used in arbitration, but that certain documents General Mills relied on in the arbitration were not included in the documents provided to the Union in advance of the arbitration. (*See e.g.,* Dkt. 1, Ex. D, p. 54-56.)

5

**RESPONSE**: Admit, but further answering, Defendant avers that the Employer also failed to provide appropriate documents pertaining to the Walsh grievance during the processing of the grievance itself, as the Arbitrator so found. *See, e.g.* Dkt 1 Ex. F, page 17, Section entitled, "The Company's Continuing Failure to Provide the Union with Evidence Pertaining to its Termination of Walsh," and stating "The Company's 'hide the ball' approach to the investigation and termination of Walsh continued through the course of the Union's attempt to conduct its own assessment of the case, and continued on through the date that the Hearing in this matter was held. For instance, the Company did not produce copies of Walsh's attendance records until long after the termination decision was made (R. 202-03), even though the Company stated during Walsh's termination hearing on March 6 that is decision to terminate rested in part upon Walsh's attendance record. R. 264-65. In the same vein, the Company contended that Sikich had given Walsh, directly, copies of her attendance records and write-ups, but Walsh testified that she had never previously seen several of them until the Hearing date. R. 281."

23. The Company denied that the Union was entitled to pre-arbitration discovery of the Company's intended exhibits, but offered the Union a chance to review the exhibits before they were relied upon in the arbitration. (Dkt. 1, Ex. D, p. 55).

**RESPONSE**: Deny. This is a mischaracterization of what occurred, and is argumentative, not factual. Further answering, the Union argued at the hearing and in its brief that it was entitled under the grievance procedure outlined in the parties' CBA to received documentation related to the Employer's decision to terminate the grievant during the time that the grievance was processed. It was unnecessary for the Union to request these materials, but even when the documentation was specifically requested the Employer still failed to produce the documents until the day of the Hearing during.

24. Arbitrator Doering admitted the exhibits into evidence over the Union's objection with limited comment. (*See e.g.* Dkt. 1, Ex. D, p. 54-56).

**RESPONSE**: Admit, but deny the characterization that the exhibits were allowed with "limited comment" as this is argument and not factual and not supported by the record evidence.

25. During the hearing, the Company marked as Company Exhibits 5-9 documents called "attendance reviews", which are documents issued to employees when they incur points under the West Chicago Plant's attendance policy. (Dkt. 1, Ex. D, p. 43-44).

**RESPONSE**: Admit.

26. The Union objected to the entry of these exhibits on the basis of relevance.

6

(Dkt. 1, Ex. D, p. 47-51).

> **RESPONSE:** Admit that the Union objected; deny that this is the primary basis for the objection. The Union's counsel objected to the introduction of these documents on several bases, arguing that the Employer was attempting to enter into evidence absenteeism records that were not relied upon by the Employer at the time that the termination decision was made. The Employer failed to produce any attendance records for the grievant at any time – either during the processing of the grievance with the Union, or in response to the Union's information request, or at the Hearing *until* the Employer's rebuttal case. *See* Dkt. 1 Ex. D pp. 148-49. The documents that the Employer initially attempted to put into evidence were documents that did not demonstrate the grievant's attendance record as of the date that the grievant was terminated. *See* Dkt 1 Ex. F, page 17, Section entitled, "The Company's Continuing Failure to Provide the Union with Evidence Pertaining to its Termination of Walsh."

27. The Company responded that the attendance reviews were relevant, because Grievant's overall attendance problem served as motivation for her having falsified the Missed Punch or Time Correction Forms. (Dkt. 1, Ex. D 50-51).

> **RESPONSE:** Admit but further answering, the Company admittedly did not raise "motivation" as a reason for reviewing the grievant's attendance problems until the day of the arbitration hearing. Dkt. 1 Ex. D pp. 145, 264-66. Prior to the arbitration proceeding, the Employer consistently advised the Union that the grievant was being terminated in part due to her absenteeism. *See*. Dkt. 1 Ex. D pp.130-31, 192-93.

28. Over the Union's objection, the Arbitrator indicated that she would admit the attendance reviews into evidence. (Dkt. 1, Ex. D, p. 49).

> **RESPONSE**: Deny. Mischaracterizes the Arbitrator's statement. She stated, "I'm going to take it under advisement," then changed her mind and stated, "I'm not indicating what kind of weight I'm going to give it. I'm just saying I think they can put it in the record if it's something they look at and they looked at with her at the time…" She added, "I understand what your objection is with respect to what the case is about but they have a different view on that." Dkt. 1. Ex. D pp. 49-50.

29. During the hearing, the Union's counsel elicited testimony from Union witness Robert ("Bobby") Kwosek Jr. related to whether the Union had received copies of these attendance reviews. (Dkt. 1, Ex. D, p. 202-205).

> **RESPONSE**: Admit

30. Kwosek was asked when attendance reviews were customarily produced by the Company to the Union, and specifically when the attendance reviews related to Grievant had been produced to the Union. (Dkt. 1, Ex. D, p. 204).

**RESPONSE:** Admit

31. Kwosek testified that, based on his records, the Company did not have a practice of providing attendance reviews to the Union in advance of disciplinary meetings, and, consistent with that practice, had not provided the attendance reviews for Grievant prior to the suspension meeting. (Dkt. 1, Ex. D, p. 204).

> **RESPONSE:** Deny. This is a mischaracterization of the testimony as well as of the practice. Sikich, the grievant's direct supervisor, testified that the normal practice was for the Company to provide copies of the attendance review forms to the employee's union steward (Dkt. 1 Ex. D p. 88), which did not happen here. Definitely, though, the attendance review forms would be given to the union when the employee was at "suspension" level in the attendance program, as Kwosek testified. Dkt. 1 Ex. D p. 204. The Company witnesses testified that they believed that the grievant *was* at suspension level when she was terminated (Dkt. 1 Ex. D p. 131, 145), hence, at a minimum the attendance forms *should have* been provided to the Union at the grievant's suspension meeting, but they were not.

32. Kwosek admitted that the Union had received copies of the attendance reviews in response to the information request it sent after Grievant's termination and in advance of the arbitration. (Dkt. 1, Ex. D, p. 202-203).

> **RESPONSE**: Deny. This witness testified that the first time he saw the attendance review forms was at Arbitration.

33. In its Post-Hearing brief, the Union reiterated its argument that the Company had not produced all of the documents requested in advance of the arbitration. (Dkt. 1, Ex. F, p. 26-27). Regarding the attendance review forms, in its brief, the Union argued only that they were not provided to the Union in response to the Union's post-termination, September 2012 request. (Dkt. 1, Ex. F, p. 27).

> **RESPONSE**: Deny. The Union consistently contended that it was entitled to receive the

8

documents during the course of the *grievance process* to receive and review information that the Employer reviewed or relied upon in terminating the grievant. The Union argued this point in its post-hearing brief to the Arbitrator. *See, e.g.* Dkt 1 Ex. F, page 17, Section entitled, "The Company's Continuing Failure to Provide the Union with Evidence Pertaining to its Termination of Walsh," and stating "The Company's 'hide the ball' approach to the investigation and termination of Walsh continued through the course of the Union's attempt to conduct its own assessment of the case, and continued on through the date that the Hearing in this matter was held. For instance, the Company did not produce copies of Walsh's attendance records until long after the termination decision was made (R. 202-03), even though the Company stated during Walsh's termination hearing on March 6 that is decision to terminate rested in part upon Walsh's attendance record. R. 264-65. In the same vein, the Company contended that Sikich had given Walsh, directly, copies of her attendance records and write-ups, but Walsh testified that she had never previously seen several of them until the Hearing date. R. 281."

34. Notably, the Union did not argue that the attendance review forms were withheld at the time of the suspension meeting and made no reference to the attendance review forms being unsigned by the Grievant. (*See generally* Dkt. 1, Ex. F).

**RESPONSE**: Deny. *See* answer to paragraph 33 above; *see also* Dkt. 1 Ex. D p. 279-81 in which the grievant denies ever seeing several of the forms before the date of the arbitration hearing. Union counsel repeatedly raised the issue of lack of signed forms and/or failure to provide accurate records reflecting the grievant's actual point in the attendance plan at the time she was terminated. *See* Dkt. 1 Ex. D pp. 124, 130-32, 148-49, 202-05. *See* Dkt. 1 Ex. F (Union Brief) p. 10 "if a supervisor believes that an employees under his/her supervision is having workplace issues, it is his/her responsibility to talk to that individual as part of corrective discipline. (TR 157). That never happened for Walsh." *Id.* p. 14, noting that "*no witness* for the Company produced a document that had recorded Walsh's actual attendance points at the time of Walsh's termination (TR 149). It was not until rebuttal (at the arbitration hearing) that the Company miraculously located this information which was on its computer system all along, but which was *never* produced to the Union…" *See also* Dkt. 1 Ex. F (Union Brief) pp. 17-18, 22, 26-27.

35. During the hearing, there was no discussion related to why the Grievant's signature did not appear on the attendance review forms or whose responsibility it was to secure her signature. (*See generally* Dkt. 1, Ex. D).

**RESPONSE**: Deny. *See* Dkt 1 Ex. D pp. 124, 130-32, 148-49; 202-05.

36. The Parties submitted Post-Hearing Briefs to Arbitrator Doering on May 3, 2013. (Ex. 1 ¶ 23; Dkt. 1, Exhibit E, Exhibit F.)

9

**RESPONSE**: Admit.

37. In its Post-Hearing Brief, the Union's counsel reiterated that the matter before the Arbitrator was a "straightforward one," namely, "did the Company have 'just cause' to terminate employee Leysa Walsh. . ." (Dkt. 1, Ex. F).

**RESPONSE**: Admit only that the quoted portions of the argument appear in the Union's Brief; deny the characterization of the Union's arguments, deny the characterization as a complete statement of the Union's position as the Union also offered extensive argument regarding the Company's failure to produce documents to the Union during the course of the grievance procedure.

38. In its Post-Hearing Brief, as in the hearing, the Union claimed that the Company had failed to produce copies of all of the relevant documents pertaining to the grievance, arguing that as a result, Grievant's "due process protections" were violated and "prohibited termination." (Dkt. 1, Ex. D, p. 53-56, 202-205, 321-322; Dkt. 1, Ex. F, p. 17-20, 26-27).

**RESPONSE**: Admit that these arguments were presented by the Union in its Post-Hearing brief, but deny that this is a complete statement of the Union's arguments regarding the Employer's failure to timely produce documents to the Union. *See* Dkt. 1 Ex. F pp. 17-18.

39. These arguments were raised by the Union as a basis on which the Arbitrator should conclude that Grievant's discharge was not for "just cause." (Dkt. 1, Ex. P. 17-20, 26-27).

**RESPONSE:** Deny; argumentative and conclusory.

40. Regarding the attendance review forms, in its Post-Hearing brief, the Union argued only that they were not provided to the Union in response to the Union's post-termination, September 2012 request. (Dkt. 1, Ex. F, p. 26-27).

**RESPONSE**: Deny. *See* Dkt. 1, Ex. F p. 17-18.

41. The Union did not argue in its Post-Hearing brief that the attendance review forms were withheld at the time of the suspension meeting and made no reference to the

10

attendance review forms having been unsigned by the Grievant. (*See generally* Dkt. 1, Ex. F).

   **RESPONSE**: Deny. *See* Dkt. 1, Ex. F p. 17-18.

  42. On August 10, 2013, Arbitrator Doering issued her Award. (Ex. 1, ¶ 24; Dkt. 1, "Exhibit G," Award p. 27).

   **RESPONSE:** Admit.

  43. Related to the discharge of the Grievant, Arbitrator Doering found that "the circumstantial evidence persuasive that the grievant intentionally sought to deceive the Company on all 3 occasions in February 2012 on which she put her shift starting time on the FOB forms she submitted and that it amounts to abuse of the Attendance Policy, and "falsification. . ." However, she determined that "there was cause for significant penalty, but there was not just cause for discharge." (Dkt. 1, Ex. G., p. 27).

   **RESPONSE**: Admit that the quoted sections appear in the Award.

  44. Accordingly, Arbitrator Doering ordered Grievant be reinstated, but without full "make whole reimbursement." (Dkt. 1, Ex. G., p. 27).

   **RESPONSE**: Admit that the quoted portion appears in the Decision; deny any characterization regarding the scope of the award.

  45. After spelling out the terms of the remedy related to Grievant's reinstatement, Arbitrator Doering then ordered that the Company make a payment to the Union. She ordered: "the Company shall pay to the Union an amount equal to the amount of hourly pay in the grievant's job at her 2012 rate for 3 weeks less 2 days – which was the amount of time from 2/16/12 to 3/5/12 that the Company took to consider and investigate – for the fact that Mr. Sikich [Company witness] did not have the grievant sign Attendance Reviews and the fact that the Company did not provide the Union with copies of relevant documents at the suspension meeting." (Ex. 1 ¶ 25; Dkt. 1, Ex. G).

**RESPONSE**: Admit.

| | |
|---|---|
| Laurie M. Burgess<br>BURGESS LAW OFFICES<br>200 West Madison Street, Suite 2670<br>Chicago, IL  60606<br>312.456-0500 | Respectfully submitted,<br><br>*/s/ Laurie M. Burgess*<br>Laurie M. Burgess |

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2014, I electronically filed **DEFENDANT/COUNTERPLAINTIFF'S RESPONSE TO PLAINTIFF/COUNTERDEFENDANTS' LOCAL RULE 56.1(A)(3) STATEMENT OF UNCONTESTED MATERIAL FACTS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

/s/Laurie M. Burgess

Laurie M. Burgess
BURGESS LAW OFFICES
200 West Madison Street, Suite 2670
Chicago, IL  60606
312.456-0500