UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GENERAL MILLS, INC. and its affiliate GENERAL MILLS OPERATIONS, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | 13 C 8020 |
| v. | ) ) | Judge George M. Marovich |
| BCTGM LOCAL 316G, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

On rare occasions, a dispute about six minutes worth of work becomes a federal case. This is one of those occasions. After plaintiffs concluded that one of their employees had, on three occasions, fraudulently signed time cards stating she had arrived at work minutes before she actually had (in order to avoid being punished for tardiness), the plaintiffs discharged the employee. The defendant filed a grievance, which the parties ultimately took to arbitration. The arbitrator agreed that the discharged employee had intentionally deceived her employer but thought discharge too strong a punishment. The arbitrator awarded reinstatement, one week of backpay to the employee and three weeks of backpay (at the employee's wage) to the defendant local union.

Plaintiffs General Mills, Inc. and its affiliate General Mills Operations, LLC (together, "General Mills") filed suit against BCTGM Local 316G (the "Union"). In its complaint, General Mills asks the Court to vacate the portion of the arbitration decision that awarded backpay to the Union. The Union, in its counterclaim, asks the Court to enforce the arbitrator's decision. Both sides have moved for summary judgment. For the reasons set forth below, the Court grants plaintiffs' motion for summary judgment and denies defendant's motion for summary judgment.

**I.     Background**

Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. Facts that are argued but do not conform with the rule are not considered by the Court. For example, facts included in a party's brief but not in its statement of facts are not considered by the Court because to do so would rob the other party of the opportunity to show that such facts are disputed. Where one party supports a fact with admissible evidence and the other party fails to controvert the fact *with citation to admissible evidence*, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of its duty to support the fact with admissible evidence. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court.

The following facts are undisputed unless otherwise noted.

The parties to this case are parties to two collective bargaining agreements: (1) a master agreement (the "Master CBA") between General Mills and the Union's International affiliate and (2) a supplement agreement (the "Supplemental CBA") between the Union and General Mills. The Master CBA provides, in relevant part:

ARTICLE 1. PREAMBLE

* * *

Section 1.02 NATURE OF AGREEMENT

* * *

> 1.02-2 - This contract represents the agreement reached between the parties as a result of having collectively bargained in respect to rates of pay, wages, hours of employment, and other conditions of employment, and its purpose is to promote and insure harmonious relations and understanding between the Company and its Employees. To that end the Company pledges itself to give its Employees considerate and courteous treatment, and the Employees, in turn, pledge themselves to render the Company loyal, efficient and cooperative service.
>
> * * *
>
> ## ARTICLE 8. GRIEVANCE PROCEDURE
>
> * * *
>
> Section 8.05 - No grievance will be considered by the Labor Relations Committee unless presented in writing and properly signed. It is agreed that grievances must be presented within a reasonable time after the occurrence thereof.
>
> * * *
>
> ## ARTICLE 9. ARBITRATION
>
> * * *
>
> Section 9.03 - The Arbitrator shall have authority to act only with respect to grievances relating to the interpretation or application of the provisions of this Master Agreement and any Supplemental Agreement, and his decision shall be final and binding on all parties involved.
>
> Section 9.04 - It is agreed that no grievance shall be subject to arbitration unless it has been processed through all the steps of the grievance procedure as outlined in ARTICLE 8.
>
> * * *
>
> Section 9.08 - If the Arbitrator shall find that an Employee has been unjustly discharged, he shall be given an opportunity to return to work. If he also finds that he should be paid for any time lost, such time shall be determined by the Arbitrator.

(Master CBA at 1, 15-17).

This case arose out of a grievance the Union filed on behalf of Leysa Walsh ("Walsh"). General Mills discharged Walsh after it concluded that she had falsified a form General Mills' employees use to record their work time when they do not use the usual method. The usual method for recording employee work time at this particular General Mills facility is by key fob. Specifically, each employee has a key fob which both opens the door to the facility and, simultaneously, records her time of arrival. If an employee does not enter via key fob (because, for example, she has misplaced it), the employee records her work time by filling out a "Missed Punch or Time Correction" form (a "time form"). Relatedly, General Mills maintains an attendance policy that assesses one half point against an employee every time she is late. If an employee reaches eight points within a certain time frame, she faces suspension. General Mills determined that, on three occasions, Walsh filled out a time form inaccurately, by stating she had arrived at 2:45 p.m. (the start of her shift), when, according to video cameras, she had arrived later--between one and 2.75 minutes later. At the time, Walsh was approaching eight points on the attendance scale. General Mills believed Walsh purposefully failed to use her fob on the three days she was late in order to have the opportunity to fill out a paper time form, on which she then recorded her arrival as timely, thereby avoiding the accumulation of half points under the attendance policy. Based on its conclusion, General Mills discharged Walsh, effective March 6, 2012, and the Union filed a grievance.

The parties did not work out the grievance, so they took the grievance to arbitration. The parties stipulated (as the Arbitrator recognized) to the issue put to the Arbitrator. That issue was: "Did the Company have just cause for the discharge of the Grievant, Leysa Walsh, and, if not, what shall be the remedy?"

The Arbitrator held a hearing on January 31, 2013. At the hearing, General Mills introduced as exhibits five documents called attendance reviews, which are documents it gives

employees who incur points under the attendance policy. When the Union objected on the grounds of relevance, General Mills argued that the documents were relevant to Walsh's motive for falsifying the time forms. The Union also objected to other documents that it said had not been provided in advance of the arbitration.

In August 2013, seventeen months after General Mills discharged Walsh, the Arbitrator issued her decision. The Arbitrator concluded that Walsh had intentionally tried to deceive the company but that, nonetheless, the company lacked just cause for termination. The Arbitrator stated:

> The Arbitrator is of the opinion that the circumstantial evidence is very strong and sufficiently establishes that the grievant knowingly and with the intent to deceive her Employer, put down her shift starting time on a FOB form each of the (only) 3 times she was running a little bit late, before being confronted about it, in February 2012 in order to avoid further accumulation of (1/2) occurrence attendance points. It was an abuse of the Attendance Policy as well as a violation of trust. The fact that the Company was not more forthright by providing documents at points where it should have, would not really have changed that.
>
> <u>But</u>, no one had been fired before for "falsifying" the 'time in' by a few minutes on a FOB form, <u>and</u> it is not clear to the Arbitrator . . . that in a first case . . . the first employee to have done this would have been fired, rather than being returned to work after suspension or whatever lengthy period ensued in arguing about it, without backpay on some sort of "last chance." The Arbitrator is therefore of the opinion that a result just short of termination is appropriate here because this is a first case and it is complicated by the intermittent FMLA.
>
> \* \* \*
>
> The Arbitrator finds the circumstantial evidence persuasive that the grievant intentionally sought to deceive the Company on all 3 occasions in February 2012 on which she put her shift starting time on the FOB forms she submitted and that it amounts to abuse of the Attendance Policy, and "falsification," but, in view of all 5 factors on p. 21 . . . in this first case in which the Company made clear that it regards failure to admit late arrival on a FOB form by an employee in a relief job to be "falsification" subject to summary discharge, there was cause for significant penalty, but there was not cause for discharge.

> Instead, and as remedy, the grievant shall be reinstated to her job on 2nd shift or to a comparable job on that shift, <u>without</u> make whole reimbursement for lost pay or benefits in the interim, <u>except</u>, that 1) she shall be given a sum equal to one week of pay at the rate she was being paid when terminated . . . and 2) she shall be given one week of vacation that she can use in the remainder of calendar year 2013. She shall be reinstated with the seniority and pension accumulation she had as of March 6th as though the gap did not exist between March 6, 2012 and her reinstatement. . . .
>
> Further, as part of the remedy here, the Company shall pay to the Union an amount equal to the amount of hourly pay in the grievant's job at her 2012 rate for 3 weeks less 2 days -- which was the amount of time from 2/16/12 to 3/5/12 that the Company took to consider and investigate -- for the fact that Mr. Sikich did not have the grievant sign Attendance Reviews and the fact that the Company did not provide the Union with copies of the relevant documents at the suspension meeting.

(Arbitration Decision at 26, 27).

## II. **Summary Judgment Standard**

Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III. **Discussion**

The parties entered a collective bargaining agreement, pursuant to which they agreed to send to final and binding arbitration any written grievances that could not be resolved between

them.  In this case, the specific grievance the parties sent to arbitration was the question of whether General Mills had just cause to discharge Walsh and, if not, what remedy was appropriate.  Here, the arbitrator concluded that Walsh had, in fact, engaged in the conduct for which General Mills discharged her but that such conduct did not constitute just cause for discharge.  Instead, the arbitrator reinstated Walsh.  In setting a remedy, the arbitrator did not make Walsh whole by awarding her backpay for the seventeen months she was out of work.  Instead, the arbitrator awarded Walsh one week of backpay, one week of vacation and pension credit for the lost time.

If either party had come to federal court complaining about the award to Walsh (i.e., had the Union complained that Walsh should have been awarded backpay for the entire time or had the company complained that Walsh's conduct was just cause for discharge), the Court would have rejected the arguments and, perhaps, granted the opposition its attorneys' fees.  When parties agree to arbitrate a dispute, they agree to accept the arbitrator's view of the facts and the meaning of the collective bargaining agreement with respect to that dispute.  *See United Paperworks Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987) ("Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept.  Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.").

Here, though, General Mills' complaint about the arbitration decision is not about the arbitrator's decision about just cause and it is not about the arbitrator's decision on backpay and pension credit.  Instead, General Mills takes issue with the arbitrator's strange decision to award

money to the *Union*, apparently because General Mills did not provide certain documents to the Union when it discharged Walsh. General Mills argues that the issue of whether General Mills was supposed to provide documents was beyond the scope of the issue the parties had agreed to arbitrate and that the remedy of paying the union what is essentially three weeks of backpay does not draw its essence from the collective bargaining agreement. Naturally, the Union disagrees.

Although a court's review of an arbitration decision is limited, a court may vacate an award if the arbitrator exceeded his powers. *United Food and Commercial Workers Local 1546 v. Illinois-American Water Co.*, 569 F.3d 750, 754 (7th Cir. 2009) (citing 9 U.S.C. § 10(a)(4)). The Supreme Court explained the standard more than fifty years ago:

> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essences from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*United Steel Workers of Am. v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597 (1960).

The arbitrator's decision to award money to the Union is puzzling. Here is how the arbitrator described the award to the Union:

> Further, as part of the remedy here, the Company shall pay to the Union an amount equal to the amount of hourly pay in the grievant's job at her 2012 rate for 3 weeks less 2 days -- which was the amount of time from 2/16/12 to 3/5/12 that the Company took to consider and investigate -- for the fact that Mr. Sikich did not have the grievant sign Attendance Reviews and the fact that the Company did not provide the Union with copies of the relevant documents at the suspension meeting.

(Arbitration Decision at 27). It is clear from this language that the arbitrator chose to award the Union an amount equal to the amount of pay Walsh would have received for the time period of February 16, 2012 to March 5, 2012. The significance of those dates (according to the

arbitrator's factual findings, which the Court takes as true) is that February 16, 2012 is the day that General Mills' employees first met with Walsh and her Union steward to discuss the allegations, and March 5, 2012 is the day Walsh was discharged. Walsh, of course, was still working for General Mills between February 16, 2012 and March 5, 2012 and was, in fact, already paid for that work. But this money was awarded to the Union, not to Walsh. It is also clear from the arbitrator's language that she had two reasons for awarding that money to the Union: to punish General Mills for not having asked Walsh to sign Attendance Reviews and to punish General Mills for not having provided certain documents to the Union at the suspension meeting.

The Court agrees with General Mills that the issues for which the arbitrator punished General Mills were outside the scope of the arbitration. The only issue the parties agreed to arbitrate was the issue of whether General Mills had just cause to discharge Walsh (and, if so, the appropriate remedy). At no point did the Union file a written grievance with respect to the question of whether General Mills should have sought Walsh's signature on Attendance Reviews or with respect to whether General Mills should have provided documents to the Union at the suspension hearing. At no point did the parties agree to refer those questions to the arbitrator. The parties had a contractual obligation to accept as binding the decision of the arbitrator on questions they agreed to refer to arbitration, but they did not agree to refer the document issues to the arbitrator. Because the arbitrator exceeded her authority by deciding questions the parties had not agreed to let her decide, the Court must vacate the portion of her decision outside the scope of the question the parties asked her to decide.

Nor could the award to the Union be thought to be part of the remedy for discharging Walsh without just cause. A remedy must draw its essence from the collective bargaining agreement. As General Mills points out, the Master CBA sets out the appropriate remedy for discharge without cause, and it does not include a fine payable to the Union. It says:

> If the Arbitrator shall find that an Employee has been unjustly discharged, he shall be given an opportunity to return to work. If he also finds that he should be paid for any time lost, such time shall be determined by the Arbitrator.

(Master CBA at Section 9.08). Thus, the parties explicitly agreed to allow the arbitrator to award the *employee* backpay, but the parties said nothing in their agreement about awarding money to the Union. Where the CBA does not explicitly authorize a remedy, a court "must consider whether the remedy was within the contemplation of the parties." *Dexter Axle Co. v. Int'l Assoc. of Machinists & Aerospace Workers*, 418 F.3d 762, 769 (7th Cir. 2005); *see also Local 879, Allied Indust. Workers of Am., AFL-CIO v. Chrysler Marine Corp.*, 819 F.2d 786, 789 (7th Cir. 1987); *Miller Brewing Co. v. Brewery Workers Local Union No. 9*, 739 F.2d 1159, 1164 (7th Cir. 1984). In *Miller Brewing*, the Seventh Circuit considered whether an arbitrator, when interpreting a CBA that explicitly allowed the arbitrator to award reinstatement and backpay, could also order a company to hire the former employees of another company. The Seventh Circuit concluded that it could not. It said:

> It is almost unimaginable that if the question had come up in the collective bargaining negotiations Miller and Pabst would have agreed that the arbitrator could force Miller or Pabst, as a remedy for breach of the preference clause . . . to hire workers who might be unqualified because they had unsatisfactory work records. This would go beyond making the victims of the breach of the preference clause whole, and would give unqualified workers windfall gains; and by reducing the efficiency of Miller's operations it might impose greater costs on Miller than the benefits it conferred on those victims. It would be a punitive sanction. Now arbitrators are rarely thought authorized to award punitive damages. It is not the kind of remedy that the parties probably would have agreed

      to authorize if they had thought about the matter, because of the great power it
      would give the arbitrator (subject to virtually no judicial review), and the bitter
      note a claim for punitive damages could inject into the parties' relationship,
      which is a continuing one.

*Miller Brewing*, 739 F.2d at 1164. Similarly, it is hard to imagine that General Mills would have agreed that an appropriate remedy for discharge without just cause would be to pay the Union money. The money was not awarded to make the victim whole but to punish the company. It is a windfall to the Union, and it does not draw its essence from the Master CBA.

      The Union argues that the award draws its essence from the Master CBA's section entitled "NATURE OF AGREEMENT." That section says, in relevant part:

> This contract represents the agreement reached between the parties as a result of having collectively bargained in respect to rates of pay, wages, hours of employment, and other conditions of employment, and its purpose is to promote and insure harmonious relations and understanding between the Company and its Employees. *To that end the Company pledges itself to give its Employees considerate and courteous treatment*, and the Employees, in turn, pledge themselves to render the Company loyal, efficient and cooperative service.

(Master CBA at 1) (emphasis added). The Union argues that the arbitrator's award (of money to it) draws its essence from the company's pledge to give employees "considerate and courteous treatment." Nothing about this language, however, suggests the Union can be awarded money if the company discharges an employee without just cause. What was not "considerate or courteous," argues the Union is General Mills' failure to provide documents. This argument, though, belies the notion that the award of money to the Union could be thought to be a remedy for unjust discharge. Instead, the Union seems to concede that the award to the Union was a punishment for the company's failure to provide documents. The issue of whether the company needed to provide documents, however, was not the issue the parties had agreed to arbitrate. The issue was outside the scope of what the parties agreed to arbitrate.

The arbitrator's decision to punish the company for not providing documents by awarding the Union money in an amount calculated by the amount of wages Walsh would have earned from the date the company first met with her to discuss the issue until the date she was discharged (even though Walsh had actually been paid for the days she worked during that time period) sounds to this Court like the arbitrator's own brand of industrial justice. Because the award to the Union was outside the scope of the issue the parties agreed to arbitrate and because the award does not draw its essence from the Master CBA, the Court hereby vacates the portion of the August 10, 2013 arbitration decision that awarded money to the Union (i.e., the third paragraph of page 27 of the arbitration decision). Plaintiffs' motion for summary judgment is granted. Defendant's motion for summary judgment is denied.

## IV. Conclusion

For the reasons set forth above, the Court grants plaintiffs' motion for summary judgment and denies defendant's motion for summary judgment. The third paragraph of page 27 of the parties' August 10, 2013 arbitration decision is hereby vacated. Case closed.

ENTER:

George M. Marovich
United States District Judge

DATED: October 10, 2014